IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-01430-WDM-CBS

DEBRA R. JACKSON,
        Plaintiff,
v.

CITY AND COUNTY OF DENVER, a body politic and corporate of the State of
Colorado, acting by and through its agency, DENVER HUMAN SERVICES,
DONNA HAMBURG, in her official capacity, and
DEIDRE GRAYSON, in her official capacity,
        Defendants.
_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

        This civil action comes before the court on "Defendants' Motion for Summary

Judgment" (filed October 18, 2007) (doc. # 58).  Pursuant to the Order of Reference

dated July 25, 2006 (doc. # 2) and the memorandum dated April 3, 2008 (doc. # 69), the

Motion was referred to the Magistrate Judge to "submit proposed findings of fact and

recommendations for rulings on dispositive motions."  The court has reviewed the

Motion and Brief, Ms. Jackson's Response (filed November 15, 2007) (doc. # 63),

Defendants' Reply (filed November 30, 2007) (doc. # 65), the exhibits and affidavits, the

entire case file, and the applicable law and is sufficiently advised in the premises.


I.      Background

        Ms. Jackson is an African American woman who was employed by the Denver

Department of Human Services ("DDHS") during the events relevant to this action.

1

(*See* Complaint (doc. # 1) at ¶ 5). Ms. Jackson began her employment with DDHS in April of 2002 when she accepted a promotional position. (*See* Complaint at ¶¶ 21, 24). Since the filing of the Complaint Ms. Jackson has clarified that this action is brought solely against DDHS. (*See* Defendants' Exhibit A-4 (doc. # 59-5) at pp. 9-10 of 28).

In July 2004 DDHS was required to reduce its workforce due to an 8.2 million dollar reduction in funding from the State of Colorado. (*See* Defendants' Exhibit A-5 (doc. # 59-6) at ¶ 2). Also in 2004 the State of Colorado implemented a new Human Services database called the Colorado Benefits Management System ("CBMS"). (*See id.* at ¶ 3). The budget reduction and the implementation of CBMS forced DDHS to combine two of its previously separate divisions: Adult Services and Family Employment Resources. As a result of the July 2004 layoffs at DDHS, Ms. Jackson's position in the Family and Children's Services Division was abolished. (*See* Complaint at ¶¶ 33, 35).

Proceeding *pro se*, Ms. Jackson commenced this action on July 24, 2006 with the filing of her Complaint alleging six claims for: (1) discrimination in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*; (2) retaliation in violation of Title VII; (3) discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*; (4) discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*; (5) violation of the Equal Pay Act, 29 U.S.C. § 206; and (6) "Respondeat Superior."

II.     Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing that there is an absence of any issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim. *Celotex*, 477 U.S. at 325. If the moving party meets this burden, the non-moving party may not rest upon its pleadings, but must come forward with specific facts showing that there is a genuine issue for trial as to the elements essential to the non-moving party's case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

"In determining whether a genuine issue of material fact exists, the court must draw all reasonable inferences in favor of the nonmoving party." *Curtis v. Oklahoma City Pub. Sch. Bd. of Education*, 147 F.3d 1200, 1214 (10th Cir. 1998). *See also Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994) (noting that "[b]ecause discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant"). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. Immaterial factual disputes and evidence that is not significantly probative will not defeat a motion for summary judgment. *Ayon v. Gourley*, 47 F. Supp.2d 1246, 1252 (D. Colo. 1998).

III.    Analysis

A.    Eleventh Amendment Immunity

"If applicable, the Eleventh Amendment bars suits against states in federal court."

*Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1231–32 (10th Cir. 1999)

(citation omitted).  State courts and courts in the District of Colorado have repeatedly

applied the factors of *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274,

280 (1977), to hold that Colorado county human services departments are arms of the

state under the Eleventh Amendment.  (*See* "Order and Memorandum of Decision"

(doc. # 85 at pp. 25-26 of 57) in Civil Action No. 05-cv-00164-EWN-CBS, *Freeman v.

White et al.*, 2006 WL 2793139 (D. Colo. Sept. 28, 2006) (collecting cases)).[1]  As a

Colorado county health and human services department, DDHS is an arm of the State

of Colorado.  Thus, DDHS is entitled to Eleventh Amendment immunity from Ms.

Jackson's claim pursuant to the ADEA.  *See Kimel v. Florida Bd. of Regents*, 528 U.S.

62, 91, 120 (2000) (holding that Congress did not validly abrogate the states' Eleventh

Amendment immunity in passing the ADEA).  Further, DDHS is entitled to Eleventh

Amendment immunity from Ms. Jackson's claim pursuant to the ADA.  (*See* "Order on

Motion to Dismiss" (doc. # 46 at pp. 7-13 of 28) in Civil Action No. 03-cv-02122-WDM-

CBS, *Cisneros v. Colorado*, 2005 WL 1719755 *4-6 (D. Colo. July 22, 2005) (dismissing

claim pursuant to Titles I, II, and V of the ADA as barred by Eleventh Amendment

immunity)).[2]  Defendants are entitled to summary judgment on Ms. Jackson's Third and

---

[1]    Pertinent parts of this unpublished case were attached to Defendants'
Brief.  (*See* doc. # 59-14).

[2]    A copy of this unpublished case is attached to this Recommendation.

4

Fourth Claims for Relief based on Eleventh Amendment immunity.[3]


B.      Exhaustion of Administrative Remedies

        1.      Title VII Retaliation and ADA Claims

        Defendants move for summary judgment on Ms. Jackson's Title VII retaliation

and ADA claims based on her failure to exhaust her administrative remedies.  As a

threshold issue, a plaintiff must exhaust certain administrative remedies in order to file a

Title VII or an ADA claim in federal court.  42 U.S.C. § 2000e-5 (Title VII); 42 U.S.C. §

12117(a) (ADA, incorporating § 2000e-5(e)(1)).  In the Tenth Circuit, exhaustion of

administrative remedies is a jurisdictional prerequisite to instituting an action for

employment discrimination under Title VII or the ADA.  *See Woodman v. Runyon*, 132

F.3d 1330, 1341 (10th Cir. 1997) ("[E]xhaustion of administrative remedies is a

jurisdictional prerequisite to instituting a Title VII action in federal court.") (internal

quotation marks and citation omitted);  *MacKenzie v. City and County of Denver*, 414

F.3d 1266, 1274 (10th Cir. 2005) ("In the tenth circuit, a plaintiff must exhaust her claims

before the EEOC as a prerequisite to federal court jurisdiction over her ADA claims.")

(citation omitted).

        "A plaintiff's claim in federal court is generally limited by the scope of the

_____

        [3]      Ms. Jackson appears to be suing under Title I of the ADA, although she
has not specified what Title she invokes.  Even if Ms. Jackson had not clarified that her
lawsuit is against Defendant DDHS only, Eleventh Amendment immunity would extend
to Ms. Jackson's claims against Defendants Hamburg and Grayson in their official
capacities.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989) ("A suit
against a state official in his or her official capacity is not a suit against the official but
rather is a suit against the official's office. As such, it is no different from a suit against
the State itself.") (citation omitted).

administrative investigation that can reasonably be expected to follow the charge. . . ."

*MacKenzie*, 414 F.3d at 1274.  *See also Brown v. Harthshorne Public Schools Dist. No.*

*1*, 864 F.2d 680, 682 (10th Cir. 1988) (a complaint may only include those claims which

were explicitly raised in the administrative charge with the EEOC and "any

discrimination like or reasonably related to the allegations of the EEOC charge")

(internal quotation marks and citation omitted).

Ms. Jackson filed one Charge of Discrimination with the EEOC in 2004.  (*See*

Defendants' Exhibit A-9 (doc. # 59-10); *see also* Defendants' Exhibit A-4 (doc. # 59-5)

at p. 17 of 28).  In her December 16, 2004 Charge of Discrimination, Ms. Jackson

alleged:

> II.      *Personal Harm*: That on or about July 16, 2004, the Respondent demoted
> me from the position Administrative Support Assistant III [sic], for which I was
> otherwise qualified.
> . . .
>
> III.     *Discrimination Statement*: I believe I was unlawfully discriminated against
> because: of race/color (African American) and/or age; 52 (d.o.b. 1/3/52) in
> violation of the State anti-discrimination law and in violation of the Title VII of the
> Civil Rights Act of 1964 as amended and in violation of the Age Discrimination in
> Employment Act (ADEA).  1) I performed the duties of the position to a
> satisfactory manner since I was hired on or about April 1, 2002, 2) I was treated
> differently compared to similarly situated employees, who were not of my
> protected groups.  3) I believe the Respondent has subjected me to a hostile
> working environment.  4) The Respondent demoted me.  5) The Respondent
> filled the position I was demoted from.

(*See* Defendants' Exhibit A-9 (doc. # 59-10)).

Ms. Jackson's administrative charge relates to disparate treatment and a hostile

work environment under Title VII and the ADEA.  There is no reference in Ms. Jackson's

Charge of Discrimination to a disability or retaliation claim.  Ms. Jackson responds to

Defendants' argument that she "filed a charge of disability discrimination in her prior

6

EEOC filing" by referring to a Charge of Discrimination filed on or about June 23, 1997

regarding her employment at a different agency approximately five years before she

was employed at DDHS. (*See* Plaintiff's Exhibit 1 (doc. # 63-2) at p. 1 of 20; *see also*

Defendants' Exhibit A-4 (doc. # 59-5) at p. 8 of 28).

Based on Ms. Jackson's representations in her Charge of Discrimination, any

investigations and determinations regarding her discrimination claim either addressed or

would reasonably be expected to have addressed her charges of race and age

discrimination based on her demotion on July 16, 2004. *See Powers v. Grinnell Corp.*,

915 F.2d 34, 38 (1st Cir. 1990) (proper scope of a complaint in federal court is

determined from the EEOC administrative charge and any actual investigation or any

investigation which could reasonably have been expected to occur as a result of the

charge). Ms. Jackson's Charge of Discrimination cannot fairly be construed to

encompass the claims of disability discrimination and retaliation contained in the

Complaint. *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1409-10 (10th Cir. 1997)

(wrongful discharge allegations not reasonably related to hostile environment

allegations); *Seymore v. Shawver & Sons, Inc.*, 111 F.3d 794, 798-99 (10th Cir. 1997)

(allegations of racial discrimination and sexual harassment in EEOC charge were not

"reasonably related" to retaliation claim); *Mawson v. U.S. West Business Resources,*

*Inc.*, 23 F. Supp. 2d 1204, 1215-17 (D. Colo. 1998) (administrative charge containing

only allegations of disability discrimination did not give defendants notice of any hostile

environment or other Title VII claims). As Ms. Jackson's ADA and Title VII retaliation

claims raise matters unrelated to her Charge of Discrimination, this court's jurisdiction

does not extend to Ms. Jackson's ADA or Title VII retaliation claims. Thus, Defendants

are entitled to summary judgment on the Second and Fourth Claims for Relief.

      2.     Title VII and ADEA Claims

Defendants further move for summary judgment on Ms. Jackson's Title VII and ADEA claims based on her failure to timely file suit within ninety days of receiving a right-to-sue notice from the EEOC.

Unless a plaintiff files suit within ninety days of receiving a right-to-sue notice from the EEOC, he or she is foreclosed from bringing suit on the allegations made in the EEOC Charge of Discrimination. *See* 42 U.S.C. § 2000e-5(f)(1);  29 U.S.C. § 626(e). The 90-day time limit starts to run on the date the plaintiff receives the EEOC notice of right to sue. *Jackson v. Continental Cargo-Denver*, 183 F.3d 1186, 1189 (10th Cir. 1999).  The 90-day time limit is strictly administered.  *See Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152 (1984) ("Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants").

Ms. Jackson filed a charge of discrimination against DDHS with the EEOC on December 16, 2004.  (*See* Defendants' Exhibit A-9 (doc. # 59-10)).  The EEOC notified Ms. Jackson on April 19, 2006 of her right to file a civil action.  (*See* Defendants' Exhibit A-11 (doc. # 59-12); Complaint (doc. # 1) at p. 16 of 17).  In her deposition testimony, Ms. Jackson alleged that the notice of right to sue may have arrived on Saturday, April 22, 2006 but that she did not pick it up until Monday, April 24, 2006.  (*See* Defendants' Exhibit A-4 (doc. # 59-5) at p. 18 of 28).

Ms. Jackson filed her Complaint on July 24, 2006.  If the notice was received on

April 22, 2006, Ms. Jackson had to file her Complaint on or before Friday, July 21, 2006 and her Complaint was untimely filed on Monday, July 24, 2006, 92 days after she received the notice of right to sue.  If the notice was received on July 24, 2006, then Ms. Jackson had to file her Complaint on or before Sunday, July 23, 2006 and her Complaint was timely filed on Monday, July 24, 2006.  *See* Fed. R. Civ. P. 6(a)(3) ("the period runs until the end of the next day that is not a Saturday, Sunday legal holiday, . . . ").

"When the receipt date for an EEOC right-to-sue letter is unknown or disputed, federal courts have presumed various receipt dates ranging from three to seven days after the letter was mailed."  *Lozano v. Ashcroft*, 258 F.3d 1160, 1165 (10th Cir. 2001). The Tenth Circuit has "implicitly sanctioned applying either a five-day or a three-day presumption" of receipt after mailing.  *Lozano*, 258 F.3d at 1165.  Were the court to apply either a three-day or a five-day presumption of receipt after mailing of an EEOC right-to-sue letter, again Ms. Jackson had to file her Complaint either on or before Friday, July 21, 2006 or on or before Sunday, July 23, 2006, that is, Monday July 24, 2006.  *See* Fed. R. Civ. P. 6(a)(3).

Drawing all reasonable inferences in favor of Ms. Jackson as the nonmoving party, the court must conclude that a genuine issue of fact remains as to whether Ms. Jackson timely filed suit within ninety days of receiving a right-to-sue notice from the EEOC.  Defendants have not proffered conclusive evidence that Ms. Jackson actually received the notice of right to sue on April 22, 2006.  Defendants are not entitled to summary judgment on the First and Third Claims for Relief on this basis.

C.    Title VII Claims

1.    Disparate Treatment

Title VII prohibits an employer from terminating any individual because of "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Ms. Jackson alleges that Defendants subjected her to disparate treatment when she received the demotion in lieu of layoff in 2004.

Because Ms. Jackson has proffered no direct evidence of discrimination, the court "applies the three-part burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973)," to Ms. Jackson's Title VII disparate treatment claim.  *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1220 (10th Cir. 2007) (citation omitted).  This framework requires Ms. Jackson to make a *prima facie* case of disparate treatment by showing: (1) membership in a protected class, (2) an adverse employment action, and (3) an inference of discriminatory intent.  *See Kendrick v. Penske Trans. Srvs., Inc.*, 220 F.3d 1220, 1227-29 (10th Cir. 2005) (noting that the "critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination") (internal quotation marks and citation omitted).  Upon making this showing, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action. If the employer satisfies this burden, summary judgment is warranted unless the employee can show there is a genuine issue of material fact as to whether the proffered reasons are pretextual."  *Etsitty*, 502 F.3d at 1220 (internal quotations omitted).

There is no dispute that Ms. Jackson is a member of a protected class and that

she was demoted in lieu of layoff. Ms. Jackson does not make her prima facie case because it is not arguable that she was terminated under circumstances that create an inference of discrimination. Ms. Jackson offers evidence that the employees affected by the 2004 layoffs were not targeted based on their race; rather "the department found them expendable . . . because they had no political or personal . . . affinity to keep those people . . . ." (*See* Defendants' Exhibit A-4 (doc. # 59-5) at p. 14 of 28; *see also* p. 15 of 28 (Ms. Jackson believed that expendable employees were those "employees who were not valuable to them politically, personally, or that no one really had any vested interest in . . ."). To prevail on a disparate treatment claim under Title VII, a plaintiff must show that his employer intentionally discriminated against him for a reason prohibited by the statute. *See Salguero v. City of Clovis*, 366 F.3d 1168, 1178 (10th Cir. 2004) (Title VII "prohibits only intentional discrimination *based upon* an employee's protected class characteristics.") (internal quotation marks and citation omitted) (emphasis in original). Ms. Jackson has presented insufficient evidence that her demotion in lieu of layoff was motivated by discrimination.

Even if Ms. Jackson had presented a prima facie case, Defendants have presented a legitimate business reason for her demotion in lieu of layoff. Roxane White was the Manager of the DDHS since August 27, 2003. (*See* Defendants' Exhibit A-5 (doc. # 59-6) at ¶ 1). Ms. White and her executive management team determined the number of positions that needed to be cut in order to balance DDHS' budget. (*See id.* at ¶ 5). Ms. White then gave instructions to her Division Directors to identify positions within their respective divisions that could be eliminated using the following guidelines: (1) preserve customer service by eliminating non-case carrying positions rather than

case carrying positions which directly served clients of DDHS; (2) maintain a consistent supervisor to supervisee ratio; (3) maintain program functions mandated by law; and (4) determine whether a non-mandated program was losing money. (*See* Defendants' Exhibit A-5 (doc. # 59-6) at ¶ 6). Once positions to be abolished were identified in each division, length of service (seniority) determined which employees would have their positions abolished. (*See* Defendants' Exhibit A-3 (doc. # 59-4) at p. 2 of 50, ¶ 8)

Deputy Manager Cecilia Mascarenas, working in a committee of eight employees facilitated by Elaine Hoffman, State Field Administrator of the Colorado Department of Human Services, identified 28 positions in the Family and Children's Services Division for elimination. (*See* Defendants' Exhibit A-6 (doc. # 59-7) at ¶ 2). Ms. Mascarenas and her committee identified positions to be abolished in the Family and Children's Division by job titles, not by employee names. (*See* Defendants' Exhibit A-5 (doc. # 59-6) at ¶ 3).

Following city-wide layoffs in 2003, on January 15, 2004 the Denver Career Service Board had adopted a revised layoff rule (Rule 14-40 through 14-49), with an effective date of March 19, 2004. (*See* Defendants' Exhibit A-3 (doc. # 59-4) at p. 1 of 50, ¶ 4 and pp. 5-10 of 50). Under the revised layoff rule, employees whose positions were abolished could only bump into lower positions within their consolidation group that were in a class series, or were positions previously held by the employee, and the bumping employee had more seniority than the replaced employee.[4] (*See* Defendants' Exhibit A-3 (doc. # 59-4) at p. 2 of 50, ¶ 6 and pp. 11-17 of 50).

On or about June 4, 2004 the Career Service Authority delivered to Julie Maerz,

---

[4]        A consolidation code is a category used only for the purposes of a layoff that aligns similar job functions or job responsibilities.

Senior Personnel Analyst in the DDHS Human Resources Department, rank order lists to be used to match employees' length of service with abolished positions. (*See* Defendants' Exhibit A-3 (doc. # 59-4) at p. 2 of 50, ¶ 10). On June 8, 2004, Ms. Maerz received from the Career Service Authority a class series document to be used to determine bumping rights. (*See* Defendants' Exhibit A-3 (doc. # 59-4) at p. 2 of 50, ¶ 11). Tamara Tyler and Ms. Maerz used the rank order lists to determine which employees would have their positions abolished based on length of service, used the class series document to determine whether an employee in an abolished position was in a class series for purposes of bumping into a lower position, and used employee personnel files to determine whether an employee had previously held any other lower positions for purposes of bumping. (*See* Defendants' Exhibit A-3 (doc. # 59-4) at pp. 2-3 of 50, ¶ 12). There were six layoff plans for the six consolidation groups at DDHS in July 2004 including the layoff plan for the Family and Children's Services Division (*See* Defendants' Exhibit A-3 (doc. # 59-4) at p. 3 of 50, ¶ 16 and p. 18 of 50). The layoff plans were reviewed by Peter Garritt of the Career Service Authority and approved by Kelly Brough, the Personnel Director of the Career Service Authority. (*See id.* at ¶ 18).

The layoff plan for the Family and Children's Division abolished twenty-eight positions including the Administrative Support Assistant ("ASA") IV position held by Ms. Jackson, three ASA III positions and seven social case worker positions. (*See* Defendants' Exhibit A-6 (doc. # 59-7) at ¶ 4). Ms. Jackson's ASA IV position was the only ASA IV position in the Family and Children's Service Division consolidation code. (*See* Defendants' Exhibit A-6 (doc. # 59-7) at ¶ 5). Ms. Jackson's position as an ASA IV was a non-case carrying position. Ms. Jackson's ASA IV position was selected for

abolition because its duties and functions could be absorbed by the remaining ASA III

positions in the Division.  (*See* Defendants' Exhibit A-6 (doc. # 59-7) at ¶ 6; *see also*

Plaintiff's Exhibit 6 (doc. # 63-2 at p. 12 of 20).  Ms. Jackson was offered and accepted

the opportunity to accept a demotion in lieu of layoff from an ASA IV to an ASA III

position, effective July 16, 2004.  (*See* Scheduling Order (doc. # 9) at p. 4; Complaint at

¶¶ 33-36; Plaintiff's Exhibit 3 (doc. # 63-2 at p. 3 of 20)).  Pursuant to DDHS' layoff plan,

Angela Johnson, a white DDHS employee who held the position of ASA III, was bumped

by Ms. Jackson.  (*See* Defendants' Exhibit A-3 (doc. # 59-4) at p. 1 of 50, ¶¶ 2, 3; pp.

45-46 of 50).  After the 2004 demotion in lieu of layoff, Ms. Jackson remained employed

at DDHS until she voluntarily resigned in October 2006.  (*See* Defendants' Exhibit A-4

(doc. # 59-5) at p. 3 of 28).  Ultimately, 66 DDHS employees were impacted by the

layoff by either being laid off, demoted to a lower position in lieu of layoff, resigning in

lieu of layoff, or retiring in lieu of layoff.  (*See* Defendants' Exhibit A-3 (doc. # 59-4) at p.

4 of 50, ¶ 19 and pp. 49-50 of 50).

       The evidence presented by Defendants indicates that the criteria for layoff were

consistent with Denver Career Service Board rules and race-neutral.  Thus, summary

judgment is warranted unless Ms. Jackson can show there is a genuine issue of

material fact as to whether the proffered legitimate, nondiscriminatory reasons were

pretextual.  *Etsitty*, 502 F.3d at 1220 (internal quotations omitted).  Ms. Jackson's

evidence includes copies of e-mails regarding: her job duties as an ASA III (doc. # 63-2

at pp. 4-11 of 20), her communications with a former coworker before she began

working for DDHS (doc. # 63-2 at pp. 13 of 20), and her sick leave records (doc. # 63-2

at pp. 14-16 of 20).  Ms. Jackson's exhibits also include a DDHS press release in 2003

(doc. # 63-2 at p. 17 of 20) and a Fact Sheet regarding the 2004 layoff (doc. # 63-2 at p. 19 of 20). None of this evidence is sufficient to demonstrate that she or African American employees were treated any less favorably than employees of other races. (*See, e.g.*, Plaintiff's Response (doc. # 63-2) at pp. 4-20 of 20). Ms. Jackson's own evidence show that among the employees she describes as "expendable," approximately 18 were white, 11 were Hispanic, and eight or nine were African American. (*See* Defendants' Exhibit A-4 (doc. # 59-5) at pp. 15-16 of 28). Of the total number of employees affected by the July 2004 layoff, 33 were white, 22 were Hispanic, 10 were African American, and 1 was Asian. (*See* Defendants' Exhibit A-3 (doc. # 59-4) at p. 4 of 50, ¶ 30; pp. 49-50 of 50). This evidence does not demonstrate that Ms. Jackson or African American employees were treated any less favorably than employees of other races. As Ms. Jackson has failed to present any evidence of pretext, Defendants are entitled to summary judgment on the First Claim for Relief.

2.      Retaliation

Even if Ms. Jackson's retaliation claim were not barred for failure to exhaust administrative remedies, it would fail on the merits. Title VII prohibits discrimination against an employee because "he has opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this chapter." 42 U.S.C. § 2000e-3(a). "Where there is no direct evidence of retaliation, we analyze a retaliation claim under the *McDonnell Douglas* burden-shifting framework." *Stover v. Martinez*, 382 F.3d 1064, 1070 (10th Cir. 2004) (citing *McDonnell Douglas*,

15

411 U.S. at 802-04).  *See also Jeffries v. State of Kansas*, 147 F.3d 1220, 1231 (10th Cir.1998) (applying the *McDonnell Douglas* framework to a claim of retaliation)).

"As to the *McDonnell Douglas* first prong, [Ms. Jackson] must first demonstrate a prima facie case." *Stover*, 382 F.3d at 1071.  "To state a prima facie case of retaliation, [Ms. Jackson] must demonstrate that: (1) she engaged in protected opposition to discrimination; (2) [DDHS] took an adverse employment action against her; and (3) there exists a causal connection between the protected activity and the adverse action." *Stover*, 382 F.3d at 1071 (citations omitted).  A plaintiff must show that his or her protected activity was a "but for" cause of the adverse employment action.  "If the employee does not bear that burden of persuasion, she may not prevail." *McDaniel v. Temple Indep. Sch. Dist.*, 770 F.2d 1340, 1346 (5th Cir. 1985).

Once Ms. Jackson establishes a *prima facie* case, there is a presumption of retaliation and the burden of production then shifts to Defendants, who must articulate a legitimate, nondiscriminatory reason for the adverse employment action.  *See McDonnell Douglas*, 411 U.S. at 802.

> The defendant's burden is merely to articulate through some proof a facially nondiscriminatory reason for the [adverse employment action]; the defendant does not at this stage of the proceedings need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, not does it need to prove that the reasoning was applied in a nondiscriminatory fashion.

*E.E.O.C. v. Flasher Co.*, 986 F.2d 1312, 1316 (10th Cir. 1992).

If Defendants can produce evidence that the employment action was motivated by a legitimate nondiscriminatory reason for the adverse employment action, the presumption created by Ms. Jackson's *prima facie* case drops out of the litigation.  It

then remains Ms. Jackson's burden to show that her protected activity was a determinative factor in Defendants' employment actions, or show that the explanation for the employment action was merely pretextual. *Flasher*, 986 F.2d at 1321.

> To show that an employer's proffered nondiscriminatory reason for an employment action is pretextual, a plaintiff must produce evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.

*Equal Employment Opportunity Commission v. BCI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 490 (10th Cir. 2006) (internal quotation marks and citation omitted). *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (ultimate burden of persuading the trier of fact that defendant deliberately discriminated against the plaintiff remains at all times with the plaintiff).

In moving for summary judgment on Ms. Jackson's claim for retaliation under Title VII, Defendants contend that Ms. Jackson has not demonstrated either a causal connection between her protected activity and her demotion in lieu of layoff or that Defendants' articulated legitimate reasons for her demotion are pretextual. Ms. Jackson submitted two grievances in February 2003, grieving a written reprimand that she received on January 24, 2003. (*See* Defendants' Exhibits A-18, A-19 (docs. # 59-19 and # 59-20)). Ms. Jackson has presented no evidence of a causal connection between her grievances in February 2003 and her demotion in lieu of layoff 17 months later. *See Trujillo v. PacifiCorp,* 524 F.3d 1149, 1157 n. 5 (10th Cir. 2008) ("In the context of retaliation claims, we have permitted plaintiffs to establish a prima facie case of discrimination by showing only close proximity in time between a protected activity and

an adverse action.") (collecting cases); *Hinds v. Sprint/United Management Co.*, 523 F.3d 1187, 1204 (10th Cir. 2008) ("retaliatory motive may be inferred from a close temporal proximity between an employee's protected conduct and an employer's adverse employment action."). Nor has Ms. Jackson presented sufficient evidence of a causal connection with a grievance she allegedly filed in November 2003. (*See* Defendants' Exhibit A-17 (doc. # 59-18) at p. 6 of 12). Ms. Jackson also "filed a grievance regarding my demotion in lieu of layoff in 2004." (*See* Defendants' Exhibit A-4 (doc. # 59-5) at p. 17 of 28). This grievance does not support Ms. Jackson's claim, as it occurred at the same time or after the demotion in lieu of layoff. (*See* Defendants' Exhibit A-17 (doc. # 59-18) at pp. 6-7 of 12). There is no evidence that Ms. Jackson's ASA IV position was abolished and she was offered an ASA III position based upon her previous grievances. *See Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1176 (10th Cir. 2007) (to satisfy the causal connection element, "a plaintiff must show that the individual who took adverse action against [her] knew of the employee's protected activity.") (internal quotation and citation omitted). The court must conclude that Ms. Jackson has not met her burden as to the third element of her *prima facie* retaliation claim.

Even if Ms. Jackson had made a *prima facie* case for retaliation, Defendants have presented legitimate and nondiscriminatory justifications for her demotion in lieu of layoff. The burden thus shifts back to Ms. Jackson to present evidence that Defendants' "proffered reason for the employment decision was pretextual – *i.e.*, unworthy of belief." *Kendrick*, 220 F.3d at 1230 (internal quotation marks and citation omitted). It is not enough to disbelieve Defendants' explanation. The court may not second-guess an employer's business judgment. *Riggs v. AirTran Airways, Inc.*, 497

F.3d 1108, 1119 (10th Cir. 2007). To defeat summary judgment, Ms. Jackson must present evidence sufficient to allow a rational fact-finder to infer that Defendants were actually motivated by a retaliatory intent. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993) (a proffered "reason cannot be proved to be a 'pretext for discrimination' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason") (emphasis in original). Ms. Jackson's evidence does not rebut Defendants' evidence of a legitimate nondiscriminatory reason for the demotion in lieu of layoff. (*See* Defendants' Exhibit A-17 (doc. # 59-18) at p. 7 of 12 (describing alleged causal connection to her demotion); Plaintiff's Response (doc. # 63-2 at pp. 4-20 of 20)).

Ms. Jackson has neither presented a prima facie case of racial retaliation nor presented evidence that Defendants' legitimate nondiscriminatory reason for the demotion in lieu of layoff was a pretext for racial discrimination. Defendants are therefore entitled to summary judgment on Ms. Jackson's Title VII retaliation claim.

### 3. Hostile Work Environment

Title VII forbids employment discrimination on the basis of race or gender. 42 U.S.C. § 2000e-2(a)(1). This includes an employee's claims of a hostile work environment based on race or gender. *See Chavez v. New Mexico*, 397 F.3d 826, 831-33 (10th Cir. 2005) (analyzing claims for hostile work environment based on race and gender).

Within her Title VII retaliation claim, Ms. Jackson alleges "a hostile work environment." (*See* Complaint at ¶ 42 (supervision by Ms. Savage, an African American

19

female who was younger and less educated, created a hostile work environment); ¶ 57

("After about two (2) weeks a hostile work environment was created because of differing

opinions over the Michael Jackson verdict.")).  Ms. Jackson further alleges that her

hostile work environment claim is based on a comment by Ms. Savage that someone

she knew "who went to University of Phoenix said they did not think they got a very

good education; . . . "  (Complaint at ¶ 42).  Ms. Jackson alleges that she is a graduate

of University of Phoenix.  (Complaint at ¶ 42).  While Ms. Jackson did not address her

hostile work environment claim in her Response (*see* doc. # 63), in her deposition

testimony she explained that "some people felt like [Michael Jackson] was guilty, and

that was it."  (*See* Defendants' Exhibit A-4 (doc. # 59-5) at pp. 19-20 of 28).

To survive summary judgment on a claim alleging a racially hostile work

environment, "a plaintiff must show that a rational jury could find that the workplace is

permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe

or pervasive to alter the conditions of the victim's employment and create an abusive

working environment."  *Sandoval v. City of Boulder*, 388 F.3d 1312, 1327 (10th Cir.

2004) (citation omitted).  Ms. Jackson "must also produce evidence from which a

rational jury could infer that she was targeted for harassment because of her gender,

race, or national origin."  *Id.*

"A pervasively hostile work environment is not established by demonstrating a

few isolated incidents of racial enmity or sporadic racial slurs. Instead, there must be a

steady barrage of opprobrious racial comments."  *Herrera v. Lufkin Indus., Inc.*, 474

F.3d 675, 680 (10th Cir.2007) (internal quotation marks and citation omitted).  The

"totality of the circumstances" test is the "touchstone" of the analysis of hostile work

environment claims. *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 799 (10th Cir. 2007) (internal quotation marks and citation omitted). The court examines the record from both an objective and subjective standpoint, looking "at all the circumstances from the perspective of a reasonable person in the plaintiff's position." *Herrera*, 474 F.3d at 680. (internal quotation marks and citation omitted).

Even when taken in the light most favorable to Ms. Jackson, the allegations and deposition testimony cannot reasonably support a finding that her work environment was charged with racial animus. *See Harsco Corp. v. Renner*, 475 F.3d 1179, 1187 (10th Cir. 2007) (factors to consider in evaluating whether the environment is hostile or abusive include: "the frequency of the conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."). Ms. Jackson has failed to produce any evidence tending to show that anyone at DDHS harbored racial animus towards her. The evidence in the record is totally lacking as to the relevant factors: frequency, severity, and whether the conduct unreasonably interfered with Ms. Jackson's work performance. Based on Ms. Jackson's allegations regarding a younger African American female supervisor, her co-workers' differing opinions about the Michael Jackson verdict, and a comment about the University of Phoenix, no reasonable fact-finder could conclude that Ms. Jackson was subjected to a hostile work environment. Defendants are entitled to summary judgment as to Ms. Jackson's hostile work environment claim.

4.  Disparate Impact

While Ms. Jackson has not specifically alleged a disparate impact theory of race discrimination in her Complaint, in her Response she argues that "Racial Disparate Impact is at issue and has not been addressed by the Defendants in their Motion for Summary Judgment."  (*See* doc. # 63 at p. 2 of 2).

"Disparate impact cases usually deal with facially neutral policies and procedures that, when applied, have an unintentional discriminatory effect on certain individuals based on their race, color, or national origin."  *Bryant v. Independent School Dist. No. I-38 of Garvin County, Oklahoma*, 334 F.3d 928, 932 (10th Cir. 2003).  "An unlawful employment practice based on disparate impact is established . . . only if . . . a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race . . . ."  42 U.S.C. § 2000e-2(k)(1)(A)(i).  "The first step in raising a disparate-impact claim is to identify the specific employment practice allegedly causing the discriminatory impact."  *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1193 (10th Cir. 2006) (citation omitted).  *See also Murphy v. Derwinski*, 990 F.2d 540, 544 (10th Cir. 1993) ("Under the disparate impact theory, a plaintiff must first make out a prima facie case of discrimination by showing that a specific identifiable employment practice or policy caused a significant disparate impact on a protected group.") (internal quotation marks and citation omitted).

Ms. Jackson identifies no employment practice allegedly causing a discriminatory impact on the basis of race.  In fact, the evidence indicates that the layoff procedure did not cause a disparate impact on the basis of race.  (*See* Defendants' Exhibit A-3 (doc. # 59-4) at p. 4 of 50, ¶ 30; pp. 49-50 of 50;  Defendants' Exhibit A-4 (doc. # 59-5) at pp.

15-16 of 28).  Ms. Jackson had not satisfied her burden to establish a prima facie case of disparate impact.

D.     ADEA Claim

1.     Disparate Treatment

Ms. Jackson alleges disparate treatment on the basis of her age regarding her demotion in lieu of layoff.  (*See* Complaint at ¶¶ 65, 68).  In July of 2004 Ms. Jackson was fifty-two (52) years old.  (*See* Complaint at ¶ 4).

In order to establish a disparate treatment claim under the ADEA, Ms. Jackson must set forth a *prima facie* case of discrimination.  *MacKenzie*, 414 F.3d at 1277 (citations omitted).  The *McDonnell Douglas* proof standard applies to ADEA claims. *Faulkner v. Super Valu Stores*, 3 F.3d 1419, 1425 n. 2 (10th Cir. 1993).  Ms. Jackson establishes a *prima facie* case of age discrimination by showing that she "was (1) within the protected age group; (2) doing satisfactory work (qualified for the position); (3) discharged (or adversely affected by defendant's employment decision); and (4) replaced by a younger person."  *Jones v. Unisys Corp.*, 54 F.3d 624, 630 (10th Cir. 1995) (citation omitted).  In reduction in force cases, because a plaintiff is not always replaced with another employee, the *McDonnell Douglas* burden-shifting scheme is modified so that a plaintiff may demonstrate the fourth element by producing "evidence, circumstantial or direct, from which a fact-finder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue."  *Jones*, 54 F.3d at 630 (internal quotation marks and citation omitted).  "The fourth element may also be shown by circumstantial evidence that a plaintiff was treated less favorably than

younger employees." *Id.* (citation omitted).

"Once a plaintiff establishes a prima facie case the burden of production shifts to the defendant to show a legitimate, nondiscriminatory reason for the decision." *Jones*, 54 F.3d at 630 (internal quotation marks and citations omitted). "If the defendant offers evidence of a legitimate nondiscriminatory reason for its employment decision, the presumption of discrimination established by the prima facie showing simply drops out of the picture." *Jones*, 54 F.3d at 630 (internal quotation marks and citations omitted). "The plaintiff must then offer evidence that age was a determining factor in the challenged decision by either showing that the defendant's proffered reasons were really a pretext for age discrimination or by producing direct evidence of age discrimination." *Jones*, 54 F.3d at 630 (citations omitted).

Ms. Jackson has not established a *prima facie* case of age discrimination because she has not demonstrated that she was treated less favorably than younger employees. Ms. Jackson's evidence suggests that the employees affected by the 2004 layoffs were not selected based on their age. (*See* Defendants' Exhibit A-4 (doc. # 59-5) at pp. 24-25 of 28 ("whether it would be more beneficial by age, whether it would be more beneficial from a political point of view, whether it would be more beneficial from a personal point of view. I think that all those were criterion determining which employees would be laid off."). Ms. Jackson's deposition testimony does not show that Defendants intended to discriminate on the basis of age in reaching the challenged decision. Nor does Ms. Jackson's intimation that the employees who were laid off "had a significant number of years toward retirement" establish a prima facie case of discrimination. (*See* Defendants' Exhibit A-4 (doc. # 59-5) at p. 25 of 28). Ms. Jackson has presented no

evidence concerning any employee's number of years of service. Further, "it is incorrect to say that a decision based on years of service is necessarily 'age based.'" *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993).

In response to Defendants' evidence of a legitimate nondiscriminatory basis for the layoff decision, Ms. Jackson has presented no evidence that the layoff process was a pretext for age discrimination. (*See* Plaintiff's Response (doc. # 63-2) at pp. 4-20 of 20). The evidence indicates that the layoff decisions were made in the absence of any information about employees' age. (*See* Defendants' Exhibit A-3 (doc. # 59-4)). Ms. Jackson fails to present evidence that would establish a triable issue as to pretext.


2.      Disparate Impact

While Ms. Jackson has not specifically alleged a disparate impact theory of age discrimination in her Complaint, in her deposition testimony she relied on her own "calculations on the ages of all the people on the list" for the July 2004 layoffs. (*See* Defendants' Exhibit A-4 (doc. # 59-5) at pp. 22 of 28). "[D]isparate impact theories of age discrimination are cognizable under ADEA." *Pippin v. Burlington Resources Oil and Gas Co.*, 440 F.3d 1186, 1198 (10th Cir. 2006) (citation omitted). "To establish a prima facie case of disparate impact discrimination, plaintiffs must show that a specific identifiable employment practice or policy caused a significant disparate impact on a protected group." *Ortega v. Safeway Stores, Inc.*, 943 F.2d 1230, 1242 (10th Cir. 1991). "Thus, an employee must point to both a significant disparate impact and to a *particular* policy or practice that caused the disparity." *Pippin*, 440 F.3d at 1200 (emphasis in original). "[I]t is not enough to simply allege that there is a disparate

impact on workers, or point to a generalized policy that leads to such an impact. Rather, the employee is responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities." *Pippin*, 440 F.3d at 1200 (internal quotation marks and citation omitted) (emphasis in original).

"[A]fter an employee establishes a prima facie case of disparate impact age discrimination under the ADEA, the burden of production shifts to the employer to assert that its neutral policy is based on a reasonable factor other than age." *Pippin*, 440 F.3d at 1200. "To prevail on an ADEA disparate impact claim, an employee must ultimately persuade the factfinder that the employer's asserted basis for the neutral policy is unreasonable." *Pippin*, 440 F.3d at 1200 (citation omitted). "The test is not whether there were other more narrowly tailored ways for the employer to achieve its legitimate business goals." *Id.* "Instead, the employee must show that the method selected was unreasonable." *Pippin*, 440 F.3d at 1200-01.

In this case, Ms. Jackson has failed to provide evidence supporting a *prima facie* case of disparate impact. Ms. Jackson notes that "it looks like 77 percent of the people on the list were 40 years of age or older." (*See* Defendants' Exhibit A-4 (doc. # 59-5) at p. 22 of 28). However, Ms. Jackson conceded that she does not know what percentage of DDHS employees were over 40 prior to the layoffs. (*See id.* at pp. 22-23 of 28). Absent any evidence of the age of all DDHS employees before or after the layoffs, Ms. Jackson's calculation has little or no significance. *See Pippin*, 440 F.3d at 1201 (citation omitted). *See also Carpenter*, 456 F.3d at 1196 (While "[s]tatistical evidence is an acceptable, and common, means of proving disparate impact, . . . [t]he statistics must,

however, relate to the proper population."). Ms. Jackson does not show that the calculation she made is statistically significant. *See Rea v. Martin Marietta Corp*, 29 F.3d 1450, 1456 (10th Cir. 1994) ("[I]n order for statistical evidence to create an inference of discrimination, the statistics must . . . eliminate nondiscriminatory explanations for the disparity. In other words, a plaintiff's statistical evidence must focus on eliminating nondiscriminatory explanations for the disparate treatment between *comparable* individuals.") Nor has Ms. Jackson identified any practice or policy of the layoff process that caused a significant disparate impact on employees over 40. *See Pippin*, 440 F.3d at 1200.

Further, Defendants have established that the layoff decisions were based on a neutral policy that considered reasonable factors other than age. Ms. Jackson has not demonstrated that Defendants' layoff process was unreasonable. Ms. Jackson has cast no doubt at all on the reasonableness of the layoff plan that abolished twenty-eight positions in the Family and Children's Division. Ms. Jackson has not demonstrated a valid disparate impact claim.

E.      ADA Claim

Even if Ms. Jackson's ADA claim were not barred for failure to exhaust her administrative remedies, it would fail on the merits. Ms. Jackson generally alleges that "Plaintiff is an otherwise qualified individual with a disability or perceived disability" and that "Defendant believing that Plaintiff suffered from a disability has discriminated against the Plaintiff [and] has failed to accommodate said disability." (Complaint at ¶¶ 71-72). The court concludes that Ms. Jackson has failed to support with sufficient

27

evidence her allegations that she is disabled or that Defendants regarded her as disabled.

> A prima facie case of ADA discrimination consists of three elements: the plaintiff (1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer or prospective employer because of that disability.

*Zwygart v. Bd. of County Comm'rs*, 483 F.3d 1086, 1090 (10th Cir. 2007) (citation omitted). Disability means:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). Major life activities means "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Ms. Jackson may also qualify as disabled under the "regarded as" subsection in one of two ways: "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999); *see also* 29 C.F.R. § 1630.2(i) (defining "regarded as having such an impairment").

Ms. Jackson contends she was disabled based on "prior injuries that I had, cumulative trauma to my upper body. Spine problems. Fibromyalgia, chronic pain." (*See* Defendants' Exhibit A-4 (doc. # 59-5) at p. 26 of 28). However, Ms. Jackson has not identified any major life activity that was limited or that Defendants believed to be

limited by her alleged disability.  Ms. Jackson fails to show that she was disabled as defined in the ADA, see 42 U.S.C. § 12102(2), because there is no evidence that she suffered from any substantial limitations in any major life activities, including work.  To the contrary, all of the evidence indicated that Ms. Jackson was able to perform all of the functions of her job at DDHS with no accommodations.  Nor has Ms. Jackson demonstrated that she suffered an adverse employment action because of her disability.  Ms. Jackson's claims are based on her demotion in lieu of layoff (*see* Defendants' Exhibit A-4 (doc. # 59-5) at p. 9 of 28) and it is undisputed that job performance was not a factor in the layoff decisions.  Further, an employer must know of a disability before it can be held liable under the ADA, *Whitney v. Board of Education*, 292 F.3d 1280, 1285 (10th Cir. 2002), and there is no evidence that Defendants were aware that Ms. Jackson had any impairment.  *See, e.g., EEOC v. Heartway Corp.*, 466 F.3d 1156, 1162 (10th Cir. 2006) (plaintiff must present some evidence that defendants believed that she was "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities.") (quoting 29 C.F.R. § 1630.2(j)(3)(i)). Ms. Jackson has failed to establish a genuine issue of material fact from which a reasonable jury could find she was disabled, that Defendants regarded her as disabled, or that she suffered an adverse employment action because of a disability.  Thus, Ms. Jackson cannot establish the first essential element for a prima facie case of discrimination under the ADA and Defendants are entitled to summary judgment on the Fourth Claim for Relief.

F.     Equal Pay Act Claim

Ms. Jackson alleges without further specificity that Defendants "engaged in illegal employment practices and policies which have discriminated against the Plaintiff." (*See* Complaint at ¶¶ 74-77). Ms. Jackson elaborated at her deposition that the basis for her Equal Pay Act claim is that "I'm doing the same job that I was doing before, but I'm not getting the same pay." (*See* Defendants' Exhibit A-4 (doc. # 59-5) at p. 59).

The Equal Pay Act prohibits sex-based wage discrimination. 29 U.S.C. § 206(d)(1). To establish a violation of the Equal Pay Act, a plaintiff must establish: "(1) she was performing work which was substantially equal to that of the male employees considering the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; [and] (3) the male employees were paid more under such circumstances." *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1364 (10th Cir. 1997) (internal quotation marks and citation omitted). Ms. Jackson has not alleged or presented evidence of any of the elements required to sustain her claim under the Equal Pay Act. The only pay disparity she alleges appears to be between two different jobs that she performed, one before and one after her demotion in lieu of layoff. As Ms. Jackson has failed to state a claim under the Equal Pay Act, Defendants are entitled to summary judgment on this claim.

G.     Respondeat Superior Claim

Ms. Jackson brings her Sixth Claim for Relief against the City and County of Denver "for the actions of the Defendants Denver Human Services, Donna Hamburg, and Deidre Grayson pursuant to the doctrine of "Respondeat Superior." Respondeat

superior is a theory of liability and not an independent claim for relief. *Gauldin v. Honda Power Equipment Mfg., Inc.*, 351 F. Supp. 455, 457 (M.D.N.C. 2005). To the extent that Ms. Jackson has clarified that she is suing DDHS only, her "claim" for respondeat superior is also superfluous. *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 762 (1998) ("a tangible employment action taken by the supervisor becomes for Title VII purposes the act of the employer"). Ms. Jackson has failed to state a "claim" for respondeat superior.

Accordingly, IT IS RECOMMENDED that Defendants' Motion for Summary Judgment" (filed October 18, 2007) (doc. # 58) be GRANTED and that summary judgment enter in favor of Defendants and against Plaintiff Jackson on all claims in the Complaint.

**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street,*

*Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely

objections may bar *de novo* review by the District Judge of the Magistrate Judge's

proposed findings and recommendations and will result in a waiver of the right to appeal

from a judgment of the district court based on the proposed findings and

recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80

(10th Cir. 1999) (District Court's decision to review a Magistrate Judge's

recommendation *de novo* despite the lack of an objection does not preclude application

of the "firm waiver rule");  *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's

objections to the Magistrate Judge's report and recommendation must be both timely

and specific to preserve an issue for *de novo* review by the District Court or for

appellate review);  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining

Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions

of the Magistrate Judge's order, cross-claimant had waived its right to appeal those

portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by

their failure to file objections, plaintiffs waived their right to appeal the Magistrate

Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir.

2005) (firm waiver rule does not apply when the interests of justice require review).

     DATED at Denver, Colorado, this 25th day of July, 2008.

                   BY THE COURT:


                    s/Craig B. Shaffer
                   United States Magistrate Judge